IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DeSHAWN JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 19 C 4609 |
| OFFICER MANIS and OFFICER McHUGH, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

DeShawn Johnson has sued two Cook County Sheriff's officers, Manis and McHugh (their first names have not been provided), alleging that they used excessive force against him at the Cook County Jail on November 18, 2018. Manis and McHugh have moved for summary judgment, arguing that Johnson did not properly exhaust the Jail's grievance process before filing suit.

**Background**

**1.  Local Rule 56.1**

Along with their motion for summary judgment, counsel for Manis and McHugh served Johnson with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Northern District of Illinois Local Rule 56.2. *See* dkt. 61. The notice explains the consequences of failing to properly respond to a motion for summary judgment and Local Rule 56.1(a)(3) statement of material facts.

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of

material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). Then, "[t]he opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Id.* (citing N.D. Ill. L.R. 56.1(b)(3)(B)). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. L.R. 56.1(b)(3)(C).

In response to defendants' statement of facts, Johnson first submitted a three-page memorandum of law. *See* dkt. 72. After defendants filed their reply, Johnson submitted a letter stating he had "not gotten any of yall mail in a long while," an affidavit dated September 29, 2020, and a motion requesting appointment of a private investigator so he can obtain security camera footage of the incident. *See* dkt. 76-78. The Court denies Johnson's request for an investigator. The Court has previously explained to him that this is not how the civil discovery process works. *See Johnson v. Cruz*, No. 17 C 0527, dkt. 41 (N.D. Ill. Apr. 14, 2017) (striking Johnson's third motion for an investigator).

None of Johnson's submissions respond to defendants' statement of facts. Although courts construe a *pro se* litigant's submissions liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him from complying with federal or local procedural rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Collins v. State of Illinois*, 554 F.3d 693, 697 (7th Cir. 2009). Thus, the factual assertions in defendants' Local Rule 56.1(a)(3) statement are deemed

admitted for purposes of summary judgment. See N.D. Ill. L.R. 56.1(b)(3)(C). The Court will, however, consider the factual assertions in Johnson's affidavit, even though it was filed late, to the extent he points to evidence in the record or could properly testify about relevant matters. See James v. Hale, 959 F.3d 307, 315 (7th Cir. 2020) (citing Fed. R. Civ. P. 56(c)(4)).

**2. Facts**

Johnson has been in custody at the Jail since February 2015. Defs.' LR 56.1 Stat. ¶ 8. In this lawsuit, Johnson alleges that Manis and McHugh used excessive force against him on November 18, 2018. Id. ¶¶ 1-3, 9.

Jail procedures require a detainee to complete and submit an inmate grievance form within fifteen days after a grievable offense, unless exigent circumstances exist or the detainee alleges that he was the victim of voyeurism, sexual assault, harassment, or sexual abuse. Id. ¶¶ 11-12. The detainee must provide the date, location and time of the offense and name the individuals who allegedly wronged him. Id. ¶ 17. A grievance submitted more than fifteen calendar days after an incident will be accepted, deemed non-compliant because it is late, and returned to the inmate. Id. ¶ 13. The Jail's grievance form and inmate handbook detail these procedures. Id. ¶ 14.

In his discovery responses, Johnson conceded that by November 18, 2018, he knew about the fifteen-day submission deadline because he had "read whatz on the grievance [form]," id. Ex. F, ¶ 2, and had submitted numerous grievances using the Jail's form, id. ¶¶ 15-16. In his affidavit, Johnson asserts that "Sheriff officers took [his] [papers] & legal books" on an unspecified date and that "they process is they lock you up first in ya cell and bring ya property 2 1/2 hours laters after they search it making

3

sure you don't get pen [paper] nor grievances . . . " Johnson Affid. (dkt. 77) at 3. From February 20, 2015 through October 2019, however, Johnson submitted forty-two timely grievances and thirty-seven non-compliant grievances, for a total of seventy-nine. *Id.* ¶¶ 22-23. At least sixty-one of these predate November 18, 2018 (not including Johnson's timely 2018 grievances, because the log of timely grievances provided by Defendants only lists grievances by year, followed by a tracking number). *See* Defs.' LR 56.1 Stat., Ex. 4 (Timely Grievance Log), Ex. 5 (Non-Compliant Grievances). Many of Johnson's non-compliant grievances were rejected with an express notation that he had submitted the grievance more than fifteen calendar days after the incident at issue. *See id.*, Ex. 5.

Grievance forms are available in the Jail's living units and can be obtained from Correctional Rehabilitation Workers (CRWs) during their rounds, as well as from supervisors and Inmate Services staff members. Defs.' LR 56.1 Stat. ¶¶ 10, 18. If a form is not available, a detainee may use any type of paper to file a grievance. *Id.* ¶ 18. CRWs make daily rounds to collect detainee grievances. *Id.* ¶ 19. A detainee may hand deliver a completed grievance form to a CRW making his or her daily rounds, give the grievance to a supervisor, or deposit it into a repository, such as a collection box or an envelope, where grievances are retrieved daily by CRWs. *Id.* ¶ 20.

From 2018 to the present, Division 9 of the Jail—where Johnson was housed starting in late 2018—has used clearly marked manila envelopes in each housing tier to collect inmate grievances. *Id.* ¶ 21. The envelopes are marked with the name of the tier's assigned CRWs and the days each CRW is scheduled to work. Detainees housed in Division 9 may place completed grievance forms in the envelopes or give them to supervisors to place in the envelopes. *Id.*

On January 10, 2019, Johnson submitted his first grievance ("Grievance 1") about the November 18, 2018 incident involving Manis and McHugh, and CRW Robert Jewel collected the grievance later that day. *Id.* ¶¶ 24-26. Because January 10, 2019 is more than fifteen calendar days after November 18, 2018, Jewel processed Grievance 1 as a non-compliant grievance. *Id.* ¶ 28. On January 14, 2019, Johnson received a completed Non-Compliant Grievance Response Form ("NCGR Form") for Grievance 1 but refused to sign to acknowledge receipt. *Id.* ¶ 29. Later that day, Johnson submitted a grievance ("CRW Grievance") alleging that CRW Jewel refused to "let [him] properly file and exhaust all [his] remedies" relating to Grievance 1. *See id.*, Ex. 5, Page ID #320. Johnson subsequently received a NCGR Form stating that CRW Jewel had followed the Jail's grievance procedures by deeming Grievance 1 non-compliant, because Johnson had submitted it after the fifteen-day submission deadline. Defs.' LR 56.1 Stat. ¶ 31.

On January 28, 2019, Johnson submitted two additional grievances about the November 18, 2018 incident ("Grievances 2 and 3"), and Inmate Services Supervisor Lester Hampton collected both grievances later that day. *Id.* ¶¶ 32-35, 38-39. Johnson listed the "Date of Incident" as November 18, 2018, and November 18, 2019; his reference to 2019 was a mistake. *Id.* ¶¶ 35, 40-42. Like Grievance 1, Grievances 2 and 3 were processed as non-compliant because Johnson submitted them after the fifteen-day due date, and Johnson again refused to sign to acknowledge receipt of the NCGR Forms for those grievances. *Id.* ¶¶ 36-37, 43-44.

**Discussion**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of proving the absence of such a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court ruling on a motion for summary judgment construes all facts and reasonable inferences the light most favorable to the nonmoving party, in this case Johnson. *Chaib v. Geo Grp., Inc.*, 819 F.3d 337, 341 (7th Cir. 2016).

The Prison Litigation Reform Act requires an inmate to exhaust administrative remedies before initiating a federal civil rights lawsuit. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Thus, if a correctional facility has an internal administrative grievance system through which an inmate can seek to correct a problem, the inmate must utilize that system before filing suit in federal court. *See, e.g., Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020).

None of Johnson's three grievances about the November 18, 2018 incident complied with the Jail's procedures, because he submitted each of them long after the fifteen-day deadline had passed. For this reason, he failed to properly exhaust the Jail's grievance process regarding the incident. *See Pozo v. McCaughtry*, 286 F.3d 1022,

1025 (7th Cir. 2002) (to exhaust, an inmate must file grievances and appeals in the place, at the time, and in the manner specified by the facilities' administrative rules).

Johnson contends that Sheriff's personnel took his papers on an unspecified date. He argues that the usual process is "they lock you up first in ya cell and bring ya property 2 1/2 hours [later] after they search it making sure you don't get pen [paper] nor grievances [these are] the same officers that gave an inmate a sheet and he later hung himself [that's] why they gotta do a 30 minute check." Johnson Affid. (dkt. 77) at 3. Johnson's bare contention that the Jail's usual practice is to prevent detainees from accessing a pen and paper or a grievance form is not enough to give rise to a genuine factual dispute regarding the availability of the grievance process or, to put it another way, to permit a finding that the process was unavailable to him on each and every day of the fourteen-day period following the alleged use of excessive force. *See Brodgen v. Archer*, No. 4:19-cv-00146, 2020 WL 1183554, at *4 (S.D. Ind. Mar. 12, 2020) (inmate's contention that the grievance kiosk "was not always available" did not "establish that the administrative grievance process was not available every day of the five-day period following the alleged use of excessive force").

Second, the fact that CRW Jewel denied Grievance 1 as untimely in January 2019 did not in any way prevent Johnson from exhausting when and as he should have back in November 2018, as he seems to contend. Johnson's unsupported contentions regarding supposed conspiracies are unavailing, including his claims that "Christmas bagz provided by a non profit org . . . is proof that Jewel was indeed conspiring," dkt. 72 at 2 (verbatim), and his allegation about "oppression of officers sticking together and intimidate the social worker Jewel was our social worker not anybody eles so it'z

7

culpable conduct on behalf of CCDOC." Dkt. 77 at 4 (verbatim).

Johnson also argues that "[t]here is nothing to indicate that officials could have done anything differently" if he had filed a grievance sooner, his "grievance[s] were sufficient under the circumstances to put officials on notice," and "there does not appear to be any reason to require [him to] present fully developed legal and factual claims at the administrative level." *See* dkt. 72 at 2. Johnson's contention that exhaustion may be excused because a grievance would have done no good and would have changed nothing is legally erroneous. *See Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (exhaustion is "mandatory") (quoting *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). And his argument that a "prisoner should not be held to the same standard as civil lawyer" does not alter this conclusion. *See Chronis v. United States*, 932 F.3d 544, 548 (7th Cir. 2019) ("[T]here is a difference between generously construing a pro se complaint and effectively excusing a pro se plaintiff from the statutorily mandated exhaustion requirement.").

Finally, Johnson says that "an institution cannot keep inmates in ignorance of the grievance system and then fault us for not using it." Dkt. no. 72 at 3. That is certainly true, *see Ross*, 136 S. Ct. at 1860, but it does not help Johnson in this case. The record establishes that before the November 18, 2018 incident, Johnson was fully aware of the fifteen-day rule, as he had read the procedures printed on the grievance form, submitted at least sixty-one grievances, and received NCGR Forms rejecting a number of those grievances as untimely because he had submitted them more than fifteen days after the underlying incidents.

In sum, the undisputed facts show that Johnson failed to exhaust the grievance

process before initiating this lawsuit because he did not file a timely grievance after the November 18, 2018 incident, and his untimely grievances do not cure his default.

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment [dkt. no. 60], denies plaintiff's motion filed in opposition [dkt. no. 72], and directs the Clerk to enter final judgment dismissing this case without prejudice. The Court also denies plaintiff's "motion for representing indigents" [dkt. no. 78].

Date: November 12, 2020

_____
MATTHEW F. KENNELLY
United States District Judge